Good morning. May it please the Court, Diana Bailey on behalf of the petitioner. I would like to start out by saying that there was evidence that the petitioner was persecuted in the past. He did testify credibly, and the immigration judge did acknowledge that his testimony was credible. This case all turns on changed country conditions, and on whether he could relocate to a different part of Bangladesh if he were returned. Yes. The country report did also state that there was still lots of political violence in Bangladesh at the time. It also stated that there was violence within political parties within the same faction. There continued to be violence in Bangladesh. It also supported the petitioner's accounts of police refusing to take police reports or acknowledge his complaints. So I would argue that although the country conditions had changed, the country condition report still acknowledged that there was lots of political violence even within the same party. How do we know that from the country condition report? Well, it states it in the report. Would you like me to go to the page number? I gather the IJ just picked up what the government argued was from the first sentence in the country conditions report. Yes. The main paragraph. Yes. Well, further on in the country report, it does say that there is still political violence, and within the same political parties there is violence. Where is that? Unfortunately, I didn't highlight it. It says political in the first paragraph after AL is in parentheses. It says political competition is vigorous and violence is a pervasive feature of politics. There are also other areas in this country report. From this record, do we know much about the party that he was a member of and the controlling party when they were opposing sides? Was there violence between the two before they sort of joined coalition? Yes. According to his testimony, there was violence between his party and the BNP and the Awami League. That is just part of the culture of Bangladesh is that these parties have violence between one another and don't get along. So then I guess my question was, is there anything in this report that says that the violence, he said, as I understand it, was at the local level. Out in the country, these guys, these political parties may be together, cooperating together, but in the countryside and in the local level, they're not. Isn't that what it is? That is what his testimony is, and the country report does... So what does the country report tell us about that? It does say that there is fighting within the same political faction. However, it doesn't say anything about the conditions in the country, countryside area. It doesn't say anything about that. But I believe it's the burden of the government to show that the country conditions have changed such that he can go back to Bangladesh. And I don't think that the government met their burden or that the country report was so detailed to overcome the testimony of the petitioner. The IJ also said he could relocate. The IJ also did say he could relocate. However, the birthplace, Tangel, is just 60 miles from the area where he was politically active for 10 years with the Jatia party. He does have a sister and brother who live there. However, he did indicate in his testimony that he didn't keep very good contact with them. Sixty miles is not a very long distance, and he had been out of the country for 10 years. Does the record reflect whether or not his brother and sister were members of the same party that he was? No, it does not reflect that they were. Does it show that they were – does it in fact show that – does it demonstrate that they in fact were not members or that it just is silent? It is just silent. It demonstrated that his son was politically active, and his son has since been granted asylum this year at the Los Angeles Immigration Court. The government also compared this case to Garcia Hernandez. However, I believe there are a lot of differences between Garcia Hernandez and this case. In Garcia Hernandez, the petitioner was only politically involved for three months. He had participated in a balloting day only during one day where these threats were made. He was from Guatemala where peace accords had come to light since that time. Also, the country report was a lot more specific. It said that only higher members of political parties were still persecuted. And so the evidence that the government gave, the new country report for Guatemala, was a lot more specific than the country report that was given for this case in Bangladesh. Would you like to take some time for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honor. John Blakely appearing on behalf of the respondent attorney general of the United States. I'd like to go straight to the changed country conditions in this case. And I'd like to emphasize that the changed country conditions that were provided in the State Department's country report aren't read in isolation, that it's important to recognize the individual circumstances of Mr. Rahman in this case when you're looking at those. And this is the place we are with that, with what the immigration judge had actually found, that Mr. Rahman had been a low-level official of his party. In fact, he had been what's called a joint official. And as a joint official, what he would do is he would get the place ready for the meetings. Somebody else would run it. He would take care of the office beforehand. Now, he stopped doing this when he left the country back in 1997. And so it's now been 10 years since that time. So we have a low-level party official who's been away for 10 years, who now says they have no interest in being a part of that party anymore. They have not been a part of that party anymore. They haven't paid any attention to what's going on in that country anymore. And they're able to relocate to another place within Bangladesh. So in that context, we're then looking at the State Department country report, which says that, yes, there is some violence between the parties. But most of the violence described in the country reports is one of two different types. The first is political violence in demonstrations, large groups of people out in public advocating on behalf of their party. It's political violence, demonstrations, rallies. That's the first type. The second type, also detailed in the country report, is corruption. It's a local-level officials go after a particular individual, and usually they're seeking money. That's what's detailed in the country reports. Even with what he had claimed before, which was never established as past persecution, it was just sort of assumed there was never any actual holding on past persecution. Even then, the actual threat was, if you read his asylum application, it was, you must leave the city. When he comes to the testimony, it's that he has to leave the country. There was never any indication of he would have to leave the party, they wanted money from him, or nothing of that sort. His circumstances don't fit what was in the State Department country report, okay, about the potential violence there could be if he was to return right now. Now, the idea is he didn't quite go through that analysis that you just did. Well, he went through that analysis. The political party that he was a member of is now in a coalition with the other party. That's true. That's basically all it was then. But he had all the other information coming in, which all applied to it, and he knew that. And so when he looked at the country conditions, he's thinking, I have this low-level official who was really unable to demonstrate past persecution. He wasn't able to make an adverse credibility determination, but mainly that was because there was an absence of evidence. When the immigration judge asked Mr. Rahman in particular, what exactly happened to you, Mr. Rahman's response was, well, I can't really explain it. And then he would just make a few, he would say that it was once or twice every three or four months. He said it was a group of students, a gang from the school. He was a little vague on that. But then other than the one instance where he was hit across the legs below the knees, there was never any particular, I had this happen to me, I went to the hospital because of this. So that's the context in which the immigration judge reached the decision that he did. In addition, I'd like to talk about the burden that Mr. Rahman has to meet in this case, and that's this. He has to not only show that it's plausible that he was correct, he has to show that the record evidence, as was put in record before the immigration judge, compels the conclusion that country conditions have not changed since the time when we assume he was persecuted. Do you add up the burdens on the government because the IJ found past persecution? Right. The burden to establish the changed circumstances was on the government. The immigration judge found that they met that burden with the State Department country report in light of the context. But he still has to show that he's, he still has to meet the ultimate burden. Yes, it's a factual determination that the immigration judge made. So it's that factual determination that faces the compelling evidence standard. And I'd just like to mention that the same standard also applies to the internal relocation. And in this case, Mr. Rahman, in order to reveal, has to meet the compelling evidence standard on both the internal relocation and on the changed country conditions. In this case, he has failed to do that, and because of that, we ask this Court to dismiss the petition for review. And if there are no other questions, I'll withdraw. Okay. Also in the country report on the CAR 139, the third paragraph down, it does say violence often resulting in deaths was a pervasive element in the country's politics. Supporters of different political parties and often supporters of different factions within one party frequently clashed with each other and with police during rallies and demonstrations. Although Petitioner was a low-level official, he did organize political meetings and events. He wasn't just hit with a rod on his leg. His store was also burned down, and it was also broken into, and the things inside the store destroyed. So he did describe incidences of persecution. He also described that these were thugs from the political parties, from the school, and that he reported these incidences and that nothing was done about them. Do you think there's any problem in showing that the harm that he alleges was government-induced? Well, I believe that we need to look to the Zhang case of turning a blind eye or acquiescence and reporting such an incident and not having the police act on that. That is turning a blind eye. That's acquiescing. It's not wanting to go after these people because of the political party that they're involved in, the government-ruling party. And objectively, looking at this record, do you think the people who were involved were so well-identified that the police could have, if they were not turning a blind eye, they could have proceeded to make some arrests? Well, the immigration judge did find that the petitioner's testimony was credible, and the police responded to him and said that we don't want to take any cases against the government. That's what they said to him. Whether he, in the record, had established whether they could have done something to these people based on names given, that sort of thing, I'm not sure, but police reports should be taken, even if it's just a description of what the person looks like, going to the school, looking into what's going on, photo lineups, that sort of thing. So just not doing anything is turning a blind eye and acquiescing. By the way, I meant to clarify with you when you were first out that we're dealing with withholding. Is that correct? Yes. And you don't, at this time, even in light of Ramadan, challenge the two-year rule? I mean the one-year determination? No. Thank you. Thank you. Thank you. We appreciate your arguments, and the matter will be submitted.
judges: Farris, Paez, Conlon